## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 23-57 (RC) |
| | : | |
| ROBERT DEGREGORIS, | : | Re Document Nos.:  50, 51 |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**DENYING MOTION FOR A NEW TRIAL; DENYING MOTION FOR A JUDGMENT OF ACQUITTAL**

## I. INTRODUCTION

Robert DeGregoris ("Defendant"), based on his findings of guilt at a bench trial, moves for a new trial and judgment of acquittal.  Defendant was found guilty on Counts One through Four of the Indictment charging him with Civil Disorder; Entering and Remaining in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Restricted Building or Grounds; and Impeding Passage Through the Capitol Grounds or Buildings, in violation of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(E), respectively.  *See* Def.'s Mot. New Trial, ECF No. 50; Def.'s Mot. J. of Acquittal, ECF No. 51 (collectively, "Defendant's Motions").  Defendant moves for a renewed judgment of acquittal[1] because he alleges that the Government did not provide sufficient evidence to demonstrate that Defendant knew that he was trespassing or that his actions obstructed the police.  In the alternative, he moves for a new trial on the basis that the Court improperly granted the Government's motion in limine.  *See* Order Granting Gov't's Unopposed Mot. in Limine, ECF

---

[1] During the bench trial, Defendant originally moved for a judgment of acquittal orally at the close of the Government's case in chief.

No. 45.  The Government opposes Defendant's Motions, arguing that Defendant's convictions were supported by sufficient evidence beyond a reasonable doubt and that he is not entitled to a new trial nor a judgment of acquittal.  For the foregoing reasons, the Court denies the Defendant's Motions.

## II.  FACTUAL BACKGROUND

Briefly summarized below are the pertinent facts that the Government proved beyond a reasonable doubt at the bench trial, which underly Defendant's conviction.  On January 6, 2021, Defendant traveled from his home in Virginia to Washington, D.C. to attend the Stop the Steal rally taking place at the Ellipse.  Defendant traveled to the Capitol, arriving on Capitol grounds early that afternoon.  He then made his way to the entrance to the Capitol where the most violent fighting occurred—the mouth of the Lower West Terrace Tunnel (the "Tunnel").  Defendant stayed at or near that entrance for approximately twenty minutes, where he urged on the large crowd of rioters standing at a distance from the Tunnel, watched as other rioters assaulted police officers defending the Tunnel, and assisted another rioter in obtaining a position from which he could kick at those officers.  During that same timeframe, Defendant was hit with OC spray that was fired by the officers guarding the Tunnel, yet Defendant more or less held his ground.  Later, when Defendant was hit with a blast of OC spray directly in the face, he began leaving the Tunnel and, eventually, Capitol grounds.  On his way out, Defendant stopped for a videotaped interview with another rioter in which he stated that he and the other rioters were not going anywhere.  He also texted friends and family about his participation in the riot, expressing to his wife that he had gone to the Capitol "to stand up for something [he] believe[d] in with every fiber of [his] soul."  Ex. 803.

On February 22, 2023, a federal grand jury returned an indictment charging Defendant with four offenses stemming from his conduct on January 6, 2021. Count One charged Defendant with civil disorder in violation of 18 U.S.C. § 231(a)(3). Count Two charged him with entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1). Count Three charged Defendant with disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2). Count Four charged him with impeding passage through the Capitol grounds or buildings in violation 40 U.S.C. § 5104(e)(2)(E). Defendant waived his right to a jury trial on June 27, 2024, *see* Min. Entry, June 27, 2024, and the case proceeded to a three-day bench trial which commenced on July 8, 2024. On October 4, 2024, the Court rendered its verdict finding Defendant guilty on all counts. Min. Entry, Oct. 4, 2024.

### III. LEGAL STANDARDS

Federal Rule of Criminal Procedure 29(c)(1) provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." This is a high hurdle to surmount. *See United States v. Hale-Cusanelli*, 628 F. Supp. 3d 320, 324 (D.D.C. 2022). When considering such a motion, the court must "consider[ ] th[e] evidence in the light most favorable to the government" and uphold a guilty verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002). In other words, the court must determine whether "a reasonable juror *must necessarily* have had a reasonable doubt as to the defendants' guilt." *United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983). A motion for judgment of acquittal "succeeds only where the

Government's case is legally defective or has suffered a significant failure of proof." *United States v. Cappuccio*, 2023 WL 6975931, at *1 (D.D.C. Oct. 23, 2023).

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions under Rule 33 are disfavored, however, and "viewed with great caution." *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011) (cleaned up). Courts "sparingly" exercise their authority to order a new trial, reserving it for "extraordinary circumstances where the evidence preponderates heavily against the verdict" and when any error "affects a defendant's substantial rights." *Id.* at 32 (cleaned up). Granting a new trial "is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (internal quotation marks omitted). The Court has "broad discretion" in deciding a motion for a new trial. *Id.* The party seeking a new trial bears the burden of proving that it is justified. *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982).

## IV.  ANALYSIS

### A.  Motion for a Judgment of Acquittal

Defendant contends that he should be acquitted on all counts "because the [G]overnment failed to provide evidence to even remotely show that [Defendant] *knew* that he was trespassing, or that he knew his actions obstructed police in any way." Def.'s Mot. J. of Acquittal at 1. As such, Defendant argues that the evidence failed to prove the essential elements of the four charges. *Id*. He contends that the Government relied on assumptions about intent without solid evidence, and the key FBI Special Agent misidentified a person in a video, admitting on cross-examination that he was wrong. *Id*. at 2. Defendant argues that, given the Government's flawed and inconclusive evidence, the charges should be dismissed and he should be acquitted. *Id*. The

Government contends that "a rational finder of fact could have found (and did find) that the Defendant acted knowingly and with the intent to interfere with law enforcement." Def.'s Opp'n at 3–4. It also explains that the evidence at trial establishes that Defendant knew he was not permitted to be in the restricted perimeter of Capitol grounds and that he had the intent to interfere with law enforcement. *Id.* at 4–5. The Government is correct.

### 1. Knowledge of Trespassing

Although Defendant argues that the Court should set aside its verdict because the Government did not present sufficient evidence of his state of mind regarding his knowledge that he was trespassing and that his actions obstructed police, the Court finds that Defendant's convictions were sufficiently supported. Defendant's state of mind with respect to his trespassing was most in question in Counts Two and Three, entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1) and disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of 18 U.S.C. § 1752(a)(1), the Court must find that the Government proved each of the following elements beyond a reasonable doubt: (1) Defendant entered or remained in a restricted building or grounds without lawful authority to do so and (2) Defendant did so knowingly. *See* 18 U.S.C. § 1752(a)(1). To find the defendant guilty of 18 U.S.C. § 1752(a)(2), the Court must find beyond a reasonable doubt that (1) the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds; (2) the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and (3) the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions. *See* 18 U.S.C. § 1752(a)(2).

The term "restricted building or grounds," which applies to both counts, means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.  18 U.S.C. § 1752(c)(1).  With respect to 18 U.S.C. § 1752(a)(1), the term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.  *See United States v. Griffin*, 549 F. Supp. 3d 49, 54 (D.D.C. 2021), *aff'd*, 119 F.4th 1001 (D.C. Cir. 2024) (citing 18 U.S.C. § 3056(a)(1)).  A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.  *See United States v. Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2006).

Taking into account the statute's text, structure, and history, 18 U.S.C. § 1752(c)(1)'s further definition of "restricted building or grounds" was intended as a jurisdictional-only provision rather than an element dividing wrongful from lawful conduct.  *See United States v. Griffin*, 119 F.4th 1001, 1015–16 (D.C. Cir. 2024); *United States v. Carnell*, 2024 WL 639842, at *9–14 (D.D.C. Feb. 15, 2024) (citing *United States v. Feola*, 420 U.S. 671 (1975)).  As discussed by the D.C. Circuit in *United States v. Griffin*, the "condition that a defendant act[ed] 'knowingly' did not require knowledge of the presence of a Secret Service protectee" nor is it necessary for a defendant to know which specific dignitary was in the restricted area.  *Griffin*, 119 F.4th at 1008.  Instead, the Circuit held that the area was deemed restricted due to Vice President Pence's presence.  *Id*. at 1012–15.  The defendant knew that he should not have been there but stayed nonetheless, which violates 18 U.S.C. § 1752(a)(1).  *Id*. at 1025.  Although the defendant in *Griffin* argued that the grounds were no longer restricted within the meaning of the statute by the time he entered, the Circuit held that the defendant's interpretation of the statute's knowledge requirement conflicts with Supreme Court precedent and the intent of Congress, as

grammatical rules and statutory principles suggest that the "knowingly" requirement in 18 U.S.C. § 1752(a)(1) does not extend to the specific reason why an area is restricted (*e.g.*, being posted or cordoned off). *Id*. at 1012. Relying upon *United States v. Feola*, 420 U.S. 671, the Circuit concluded that when an element of a crime provides federal jurisdiction over a state law offense and is not essential to the crime's existence, knowledge of that element is not required. *Id*. at 1018. Thus, because trespassing is wrongful regardless of whether it is governed by federal, state, or local law, the Circuit held that it is sufficient that a defendant knowingly trespassed in a restricted area without needing to know the restriction was due to the Vice President's presence. *Id*. at 1019.

The record shows that there is more than sufficient evidence to support that the West Front (including the Lower Went Terrance) of the United States Capitol was a restricted "building or grounds," that Defendant engaged in "disorderly" and "disruptive" conduct, and that he knew that he was not permitted to be present. First, the parties stipulated that the Capitol Building and grounds was a restricted area on January 6, 2021. *See* Stipulation at 1, ECF No. 43 ("By law, the U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol."). Video footage that Defendant filmed also supports that he saw bike rack barriers, heard a protester shouting for the Capitol Police to "stand down," observed rioters climbing a media tower, and saw police wearing high-visibility gear on Capitol grounds. Ex. 813 at 0:00–0:30; Ex. 818; Ex. 823. The evidence shows that Defendant remained within the restricted area for over an hour, pushing himself towards the mouth of the Tunnel, where the police officers were wearing high-visibility gear and

any doubt that the Capitol grounds was a restricted area would have been cleared up.   Ex. 309G at 5:10–5:30.  Police officers hit Defendant with OC spray at least ten minutes before he left the Capitol grounds, and he still made no effort to leave the restricted area until he was later sprayed with OC spray again, while others hit with the spray were able to easily leave the area.  Ex. 100E at 11:15–11:25, Ex. 309G at 7:00–7:10; Ex. 322G at 11:18; Ex. 322G 15:23–15:40; Ex. 322G 16:30–16:35; Ex. 200 at 7:15; Day One Trial Tr., at 168–169, ECF No. 53.

He also committed his conduct knowingly, as he readily joined in the heave-ho push, assisted another rioter who he knew was going to attack the police, and yelled words of encouragement at the hundreds of other rioters surrounding him which were not accidental nor mistaken acts.  *See e.g.*, Ex. 309G at 0:22–0:30.  All of this evidence demonstrates that Defendant knew that the Capitol grounds were restricted, yet he knowingly entered and remained in the area—participating in disorderly and disruptive conduct—as police officers attempted to defend it.  As such, the Court found that the Government sufficiently proved beyond a reasonable doubt that Defendant knowingly entered, remained, and participated in disorderly and disruptive conduct in restricted grounds on January 6, 2021, and Defendant is not entitled to a judgment of acquittal on any of the counts on this basis.

### 2. Intent to Interfere with Law Enforcement

With respect to whether Defendant had the intent to interfere with law enforcement, the Court finds that the record provides ample evidence that supports the verdict against Defendant and a judgment of acquittal is not warranted.  Defendant's intent to interfere with law enforcement was most in question in Count One, obstructing law enforcement officers during a

civil disorder in violation of 18 U.S.C. § 231(a)(3).[2]  To find Defendant guilty of the offense, the

Court must find that the Government proved the following three elements beyond a reasonable

doubt: (1) Defendant knowingly committed or attempted to commit an act with the intended

purpose of obstructing, impeding, or interfering with one or more law enforcement officers; (2)

at the time of Defendant's actual or attempted act, the law enforcement officers were engaged in

the lawful performance of their official duties incident to and during a civil disorder; and (3) the

civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the

movement of any article or commodity in commerce, or the conduct or performance of any

federally protected function.  *Id*.  The satisfaction of these elements demonstrates that Defendant

intended to interfere with law enforcement on January 6, 2021.

    As proven beyond a reasonable doubt during trial, Defendant's participation in a

coordinated heave-ho push with other rioters attempting to dislodge and break through the line of

police officers guarding the Lower West Terrace Tunnel constituted an act that was clearly

intended to interfere with and impede the officers' efforts to secure that entrance to the Capitol.

Ex. 329D at 2:00–2:44.  Defendant's behavior interfered with the officers' ability to perform

their duties in the Tunnel, as the push made it more difficult for officers to do their job.

Defendant participated in the heave-ho push knowingly, as he was aware of the nature of his

conduct, and the act was not done through ignorance, mistake, or accident.  Although Defendant

testified that he did not intentionally engage in the heave-ho push, this Court found that

testimony to not be credible because the video evidence clearly depicts that Defendant actively

---

[2] Similarly, Count Three has an intent requirement, requiring a defendant to act "[w]ith intent to impede or disrupt the orderly conduct of Government business or official functions." *See* 18 U.S.C. § 1752(a)(2).  As the Court explained when it rendered its verdict, this standard was also met.

pushed an individual with the intent to obstruct, impede, or interfere with law enforcement. Ex. 329D at 2:00–2:44.

Defendant's intent is also demonstrated by him grabbing a police baton that other rioters were passing back through the Tunnel. Ex. 1006 at 0:13–0:33. Additionally, Defendant actively joined in the pushing against the police officers, and the video footage demonstrates that Defendant knew that the police officers were in the tunnel. Ex. 329D at 2:00-2:44. Evidence also shows that Defendant assisted rioter David Dempsey to climb over rioters, grab the wooden archway at the mouth of the Tunnel, and kick at officers who were stationed there. See Ex. 327A at 0:00–0:13; Ex. 309 at 5:52–6:05. Defendant knew that Dempsey was going to attack the police stationed in the Tunnel, as he witnessed Dempsey throw a stick into the Tunnel after helping him crawl on top of other rioters earlier in the day. Ex. 309G at 1:49–1:55; Ex. 326A at 0:00–0:20. Defendant also witnessed Dempsey hoist a police shield and, later, a flagpole or stick that he attempted to throw into the Tunnel. Ex. 309G at 2:00–3:52.

Finally, Defendant knew that there were police officers guarding the mouth of the Tunnel before he engaged in the heave-ho push. By the time Defendant assisted Dempsey in his assault on the police officers, he had seen the officers guarding the Tunnel with his own eyes. Because of Defendant's elevated position on the railing, he had a clear vantage point into the Tunnel where he could see the officers stationed immediately inside. Ex. 309G at 5:10–5:30. Even after his participation in this effort, and after a police officer used pepper spray against him, Defendant appeared in a posted video on social media stating, "[w]e ain't going nowhere." Ex. 325A. He also posted a selfie on Twitter stating, "[t]ook some pepper spray & tear gas breaching the front doors… Worth it." Ex. 708. These statements demonstrate that Defendant

knew that the police officers were present to defend the restricted area on the Capitol grounds and that he intentionally impeded their efforts.

Defendant further argues that the Government's evidence is somehow deficient because one of the Government's witnesses misidentified a rioter that Defendant assisted. But despite Defendant's argument that that the key FBI Special Agent misidentified a person in a video, the Court finds that this position is immaterial because the agent corrected the misstatement on cross-examination, the Court did not rely on the error, and it otherwise found the agent's testimony credible despite the error. *See* Day Two Trial Tr. at 17, ECF No. 54. And regardless of this error, there is sufficient evidence on the record – separate from the FBI Special Agent's misidentification – to support that Defendant intentionally impeded law enforcement's efforts to protect the restricted grounds. As was determined during trial beyond a reasonable doubt and as the Court summarizes here, Defendant had the intent to interfere with law enforcement and he has not met his "very high" burden to alter that conclusion. *United States v. Pasha*, 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015). As such, the Court denies the motion for a judgment of acquittal.

### B.  Motion for a New Trial

Defendant argues that he is entitled to a new trial "because the Court improperly granted the Government's Motion in Limine . . . which drastically limited [D]efendant's testimony at the trial." Def.'s Mot. New Trial at 1. He contends that "the amount of precluded speech in the [Government's] Motion in Limine was broadly defined, and overly expansive," and it impacted his "ability to sufficiently testify to the truth of his experience[.]" *Id*. Defendant argues that the motion in limine "disallowed certain facts, to include testimony showing that: law enforcement officers guided [D]efendant to the capitol; law enforcement officers gave [D]efendant directions

to the west tunnel; law enforcement officers gave defendant no commands to leave, nor told him that the area was a declared riot; and that the [D]efendant witnessed a law enforcement officer beating a protester in his immediate vicinity." *Id*. at 1–2. He also contends that the Government's motion prevented him from fully testifying about the conditions surrounding his situation and his lack of knowledge regarding the illegality of his presence on January 6, 2021, which hindered his ability to present a complete defense at trial. *Id*. at 2. In response, the Government argues that Defendant failed to oppose its motion in limine pre-trial. See Gov't's Opp'n Def.'s Mots. at 7, ECF No. 52. But regardless, the Government contends that the Court's granting of the motion was not improper, nor did it create "a serious danger that miscarriage of justice" warranting a new trial under Rule 33. *Id*. at 7 (quoting *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011)). The Court agrees with the Government.

Before the trial, the Government moved in limine to preclude Defendant from "any of the following: (1) arguing any entrapment by estoppel defense related to law enforcement; (2) offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the defendant's entry into the United States Capitol building or grounds or his conduct therein lawful; (3) arguing or presenting evidence of alleged inaction by law enforcement unless the defendant specifically observed or was otherwise aware of such conduct; or (4) arguing or presenting evidence of alleged misconduct by law enforcement in connection with the defendant's arrest." Mot. in Limine at 1, ECF No. 41. After Defendant failed to oppose the motion, the Court found that Defendant's failure to oppose meant that he did not demonstrate any basis for an entrapment by estoppel defense. *See* Order Granting Gov't's Unopposed Mot. in Limine at 2. The Court emphasized that established case law makes it clear that law enforcement inaction does not excuse illegal conduct. *Id*. However, despite granting the

Government's motion in limine, the Court allowed Defendant to testify about the law enforcement actions he personally witnessed. *Id.* at 3.

As the record makes clear, Defendant did not oppose the Government's motion in limine. Defendant's failure to oppose the Government's motion pre-trial limits the Court's review on Defendant's Rule 33 motion to "plain error that affects [his] substantial rights." Fed. R. Crim. P. 52(a); *see also United States v. McGill*, 815 F.3d 846, 877 (D.C. Cir. 2016) (holding that failing to raise an objection during trial results in the forfeiture of that objection, allowing review only under the more lenient "plain error" standard). An error is "plain" if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). The Court finds that it was proper for it to grant the Government's motion in limine because Defendant does not demonstrate that the Court committed error, much less that such alleged error was either "clear" or "obvious."

In its Rule 33 motion, Defendant includes boilerplate arguments for why he is entitled to a new trial on the basis of the Court allegedly improperly granting the Government's motion in limine. The Court finds that Defendant's reliance on nothing more than a vague assertion that the amount of precluded speech in the Motion in Limine was broadly defined and overly expansive and that he was not allowed to testify at trial about certain matters is not sufficient to warrant a new trial. Def.'s Mot. New Trial at 1–2. Defendant was permitted to testify about his personal interactions with law enforcement; the Court only excluded evidence regarding police actions or inactions of which the Defendant was unaware. Order Granting Gov't's Unopposed Mot. in Limine at 3. Therefore, without any specificity about the testimony that granting of the Government's motion in limine allegedly precluded, and given the broad range of personal testimony the Court's order allowed (including most of what Defendant argues was precluded),

Defendant's arguments do not meet the threshold necessary to warrant a new trial. *United States v. Williamson*, 81 F. Supp. 3d 85, 87 (D.D.C. 2015) (holding that the defendant's motion is denied "because there was no substantial error, or in fact any error, affecting [his] substantial rights"). As such, Defendant's motion for a new trial is denied.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for a new trial and motion for a judgment of acquittal. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 6, 2025                                             RUDOLPH CONTRERAS
                                                                                United States District Judge